UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY G PETRELLO, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-08-1933 |
| | § | |
| MATTHEW W PRUCKA, *et al*, | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

This preferentially set housing discrimination case is before the Court, following a final pretrial conference in advance of a second trial.  *See* [Document No. 230].  Earlier a mistrial was declared when the jury failed to reach a verdict.  However, on the eve of the trial the presiding judge recused himself, causing the case to be reassigned to the undersigned.  Now having reviewed the Court's orders, pending motions, the record and the opinion of the Fifth Circuit Court of Appeals, the Court is of the opinion that the plaintiffs cannot and have failed to establish a federal claim, as a matter of law.  Therefore, this case should remanded to the 55th Judicial District Court of Harris County, Texas.

**II.    FACTUAL BACKGROUND**

In late October 2007, Anthony Petrello learned that his next-door neighbors, Matthew and Sherry Prucka, would be selling their house. He wanted to purchase the Pruckas' house, and engaged Mr. Prucka in discussions about buying it. The parties' dispute a number of facts, but the essentials facts of their discussions are not in dispute.  It is undisputed that the parties did not enter into a written agreement and that the Petrellos were intent on being excluded from any

listing agreement that the Pruckas might consummate with their own broker. Hence, when Peggy McGee, the Pruckas' broker who was also an employee of Heritage Texas Proeprties, L.P., completed a listing agreement with the Pruckas, the Petrellos were specifically excluded as persons of interest. However, the Petrellos made an oral offer of $6.5 million to the Pruckas for the house. The Pruckas promptly rejected the offer, expressing the desire to test the housing market.

The property was listed by the broker for $8,299,500. Shortly thereafter, an offer of $7.6 million was made by Rahul and Usha Nath. The Petrellos were informed that the Pruckas had an offer that was in the range of their asking price. However, they refused to disclose the details of the offer. The Petrellos then made an offer of $8.2 million, net of commission. However, the Pruckas entered into an earnest money contract with the Naths and proceeded to close on the sale of their house to the Naths, which closing occurred on or about January 16, 2008. Earlier, on December 11, 2007, the Petrellos had filed a suit against the Pruckas and a *lis pendens* notice was filed against their house.

### III. THE SUIT AND THE PARTIES' ALLEGATIONS

As stated, on December 11, 2007, the Petrellos filed a lawsuit in the 55th Judicial District Court of Harris County against the Pruckas and also filed a notice of *lis pendens* against the house. They allege that the Pruckas breached an oral agreement with them concerning the sale of their house, and sought, by their suit, to unwind the sale to the Naths so that they might purchase the house.

On July 8, 2008, the Petrellos amended their petition to allege that the Pruckas discriminated against them in the sale of their house. They allege that they desired to purchase the Prucka house so their daughter, who is disabled, and her medical team, would have space for

her rehabilitation. They explained to the Pruckas that certain structural modifications would be necessary so that the house would meet their daughter's needs. The Petrellos claim that Mr. Prucka's statement that he preferred to sell the home to someone who would preserve the historical architectural integrity of the house, constituted discrimination against their disabled daughter.

In a volley of allegations and contentions, the Petrellos claim that the Pruckas, Heritage, McGee and the Naths, violated the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3631, the Texas Fair Housing Act ("TFHA"), Tex. Prop. Code §§ 301.001-.171; the Houston Fair Housing Ordinance ("HFHO"), Title 17, 17-1 to 17-80; committed civil conspiracy, 42 U.S.C. §§ 1981-1988; and breach of contract for which they sought equitable relief such as estoppel, constructive trust, tortious interference with existing contracts and with business relations, aiding and abetting, breach of auction and for declaratory relief.

On January 24, 2008, the Naths intervened in the case asserting separately, against the Petrellos, claims of tortious interference with the Prucka/Nath contract, violations of the TFHA and intentional infliction of emotional distress. Five months into the suit, and after an amended pleading a Notice of Removal was filed by both the Petrellos and the defendants.

## IV. LEGAL STANDARD – JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, judgment as a matter of law is warranted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Hence, "[a] motion for judgment as a matter of law is appropriate if, after considering the evidence presented and viewing all reasonable inferences in the light most favorable to the nonmovant, the facts and inferences point so

strongly in favor of the movant that a rational jury could not arrive at a contrary verdict." *Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 697 (5th Cir. 1997) (citing *London v. MAC Corp. of Am.,* 44 F.3d 316, 318 (5th Cir.), *cert. denied*, 516 U.S. 829, 116 S. Ct. 99, 133 L. Ed.2d 53 (1995)). However, "if reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005) *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000) (citing *Baltazor v. Holmes,* 162 F.3d 368, 373 (5th Cir. 1998)). While examining the record as a whole, "the Court 'should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *U.S. Commodity Futures Trading Com'n v. Dizona*, 594 F.3d 408, 413 - 14 (5th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000)).

## V.     ANALYSIS AND DISCUSSION

The Petrellos contend that the defendants engaged in a conspiracy to violate the rights of their mentally and physically disabled daughter in violation of the FHA, 42 U.S.C. § 3601 *et. seq.*, and 42 U.S.C. § 1985(3). At this stage of the proceedings, the sole basis for federal question jurisdiction rests on whether the Petrellos can establish a viable claim of housing discrimination against the Pruckas, McGee and/or the Naths.[1] The Court is of the opinion that the Petrellos' conspiracy claim under section 1985(3) is maintainable only if there exists a sustainable federal cause of action based in a federal statute or the federal Constitution.

---

[1] On April 5, 2010, the Petrellos and Heritage entered into a joint motion to dismiss their respective claims against each other with prejudice. [Document No. 199]. The effect of a "with prejudice" dismissal is that it adjudicates the merits of the Petrellos' claim against Heritage.

Here, the basis for the Petrellos' conspiracy claim rests on allegations of a violation of the FHA, specifically § 3604(f)(1). Section 3604(f)(1) provides, in relevant part:

> . . . it shall be unlawful to discriminate in the sale . . . or to otherwise make unavailable or deny, a dwelling to any buyer . . . because of a handicap . . .
>
> (A)   [of] that buyer . . . ;
>
> (B)   a person . . . intending to reside in that dwelling after it is sold, . . . ; or
>
> (c)   any person associated with that buyer . . .

The FHA prohibits property owners from refusing to sell a house to a person because of that person's disability in specific circumstances. *See* § 3604(f)(1)(A-C). Any such claim of discrimination or disparate treatment may be brought by a person in behalf of a disabled person who intends to live in the house. *Id.* Where, as here, the Petrellos' suit is brought pursuant to 42 U.S.C. § 1981, the necessary proof and analysis required follows the *McDonnell Douglas* test. *See Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 432 (E.D.N.Y. 2002).

Under the *McDonnell Douglas* test, to establish a *prima facie* case, a plaintiff must establish that he is a member of a protected class, he sought to purchase and were qualified to purchase the dwelling at issue, he was denied the right to purchase the dwelling, and the dwelling, remained available after he was denied the opportunity. *See McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973); *see also Holt v. JTM Indus., Inc.,* 89 F.3d 1224, 1229 (5th Cir. 1996), *cert. denied*, 520 U.S. 1229 (1997). The Court will address these elements of proof in turn in light of the trial evidence and the briefs on file.

The Petrellos cannot establish a *prima facie* case against the Pruckas, McGee or the Naths. It is undisputed that the Petrellos are members of the protected class protected by the fact that their daughter suffers with a handicap. However, they cannot establish that they were

qualified to purchase the Pruckas' house.  Traditionally, the requirement of qualification to purchase is addressed to an approved loan or having sufficient legal capacity.  Here, however, the Petrellos lacked a qualification that is necessary to the purchase of real estate.  There was no written offer to purchase executed by the Petrellos. *See Ward v. Ladner*, 322 S.W.3d 692, 700 (Tex. App.—Tyler, 2010).  Hence, they lacked the legal capacity to invoke the FHA, the TFHA or the HFHO.

Under state law, the statute of frauds is an affirmative defense requiring that specified classes of contracts be in writing to be enforceable.  A contract for the sale of real estate falls within the class of contracts that must be in writing to be enforceable. *Id.* (citing *Gerstacker v. Blum Consulting Engr's, Inc.*, 884 S.W.2d 845, 850 (Tex. App. – Dallas 1994, writ denied); *See also* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4) (Vernon 2009).   It is undisputed that the Petrellos and the Pruckas did not enter into a written agreement.

The Petrellos' claim, however, that an oral contract exists between the Pruckas and themselves giving them a "last look" opportunity.  Assuming, that allegation to be true, it is nevertheless, an unenforceable contract against the property.  While the agreement might give rise to a suit for breach of promise, it does not give rise to specific performance such as where a valid earnest money contract is in place.  The Petrellos admit that no written contract for the purchase of the Pruckas' house exists.  Hence, in order to enforce a sale, an exception to the statute of frauds must be established.

An exception to the statue of frauds bar does, in fact, exist.  The Court recognizes that an equitable exception to the statute of frauds may be asserted by a party in certain circumstances. To qualify for the exception, a plaintiff is required to show that consideration for the promise(s) passed between the seller and the purchaser, the purchaser is in possession of the house and the

purchaser has performed substantial and valuable improvements to the house. *See Hooks v. Bridgewater*, 111 Tex. 122, 129 (Tex. 1921). The Petrellos do not argue, nor do they suggest, that an equitable exception to the statute of frauds exists in their behalf.

The evidence also fails to establish that Heritage, McGee or the Naths were involved in any discussions with the Petrellos concerning the house. When the Pruckas and McGee were consummating a broker agreement, the Pruckas informed McGee that the Petrellos desired to be excluded from consideration under the agreement. This is as the Petrellos would have it. The evidence, therefore, establishes that the Petrellos never sought to purchase the Pruckas' house through Heritage and McGee. Likewise, it was after the Naths entered into a contract with the Pruckas that they learned of the Petrellos interest in the house. Therefore, the evidence fails to establish that Heritage, McGee or the Naths engaged in any conduct that prevented the Petrellos and the Pruckas' from consummating a contract for the purchase of the house.

Hence, the Court holds that the Petrellos, even after a trial, have failed to establish a *prima facie* case of a violation of the FHA, the TFHA or the HFHO. Equally, the trial evidence is undisputed that the Petrellos excluded themselves from the necessary legal process to make a claim for unlawful discrimination. Mr. Prucka's personal bias, assuming it constitutes unlawful discrimination on his part, as opposed to his wife, does not give rise to a suit for unlawful discrimination because the Petrellos had excluded themselves from the usual and necessary commercial process, that arguable, gives rise to such a discrimination claim. *See* 42 U.S.C. § 3603(1)(A-C). The Pruckas' house was not part of any federal loan mortgage. And, because the Petrellos excluded themselves from the traditional real estate sale process, the sale that they now seek to enforce was arguably exempt from the FHA. *See* 42 U.S.C. § 3603(b)(1).[2]

---

[2] The Petrellos standing, to bring a suit under the FHA, TFHA or the HFHO, is absent. Mr. Petrello's trial testimony suggests that his handicapped daughter was not slated to move into the house upon purchased. Instead, he described

Equally critical in this analysis of the plaintiffs' suit is the fact that the Petrellos' federal conspiracy claim rests on their ability to establish a FHA claim. As well, the nature of the evidence, as it relates to the Petrellos' TFHA and HFHO, claims is the same. In all instances, the Court finds that their conspiracy claim fails. In order to establish a conspiracy, the Petrellos must establish that two or more of the defendants agreed to deprive them of the benefits of the law, under the FHA, the TFHA and the HFHO because of their daughter's handicap, that one of the defendants committed an act in furtherance of the object of the conspiracy, and the Petrellos suffered injury as a result. *See United States v. Richards*, 204 F.3d 177, 205 (5th Cir. 2000).

First, the Petrellos cannot and have not established that the Naths were knowing participants in any alleged conspiracy. They admit, and the evidence establishes, that the Naths did not know that the Petrellos had made an oral offer to the Pruckas at any time prior to executing their earnest money contract with the Pruckas. Hence, the Naths cannot be co-conspirators with the Pruckas because a co-conspirator must knowingly engage in illegal conduct. The Petrellos' admission and the absence of other evidence to support such a claim, means that the Petrellos have failed to establish one or more of the necessary elements of their conspiracy claim. Therefore, their conspiracy claim fails as against the Naths.[3]

McGee, the broker, is also accused by the Petrellos of participating in a conspiracy with the Pruckas to thwart the purchase of the Pruckas' house. In her testimony, McGee admitted that the Pruckas expressed a preference not to sell their house to the Petrellos. Their stated reason to her was that they did not want the purchasers to "change the architectural integrity of the home."

---

its use as "for her therapy and to play." In other words, she would use the house as she currently uses her playroom. *See* [Trial Transcript pp. 159:21-160:2]. *See also Home Quest Mortg. LLC v. Am. Family Mut. Ins. Co.,* 340 F.Supp. 1177, 1185 (D. Kan. 2004).

[3] The Naths' FHA claim against the Petrellos fails for the reasons stated in Note 2, infra.

However, McGee also testified that, while the Pruckas desired no architectural changes in the house, they were "willing to look at any buyer that came along."

The evidence establishes that McGee was aware that the Petrellos were interested in purchasing the Pruckas' house, but desired no formal relationship with her. As a result, there was no duty owed by McGee to the Petrellos outside her general duty under the law, *i.e.,* not to intentionally discriminate against a handicap purchaser. As a general principle, however, McGee could not conspire against the Petrellos for this very reason – there was no contractual or other relationship between them from which a duty might arise. While her position in the matter ran counter to that of the Petrellos, there was no reason, in law, for her to ignore her contractual obligations to the Naths and the Pruckas.

Moreover, there is no evidence that she engaged in conduct outside her contractual relationship with the Pruckas. In order for McGee to be guilty of engaging in a conspiracy against the Petrellos, the Petrellos must establish that she committed an act prohibited by law. She must intentionally commit some unlawful act that was designed to deprive the Petrellos of their opportunity to "meet or beat" her client's offer. After a full trial, the evidence fails to support such a finding. McGee did no act that furthered the objective(s) of the Pruckas beyond what she contracted to do. Hence, the evidence establishes that McGee's conduct was facially neutral. Establishing that McGee closed the deal between the Pruckas and the Naths is not enough to establish conspiratorious conduct.

As well, the evidence establishes that the Naths, not the Petrellos, were qualified purchasers. There is no evidence that McGee engaged in conduct that was unethical, immoral or illegal designed to defeat the Pruckas' opportunity. And, nothing in the FHA, the TFHA or the

HFHO prevented McGee from aiding or assisting the Pruckas in fulfilling their goal irrespective of the Pruckas' preference so long as her actions remained facially neutral.

Finally, the Petrellos' conspiracy claim against McGee fails because they cannot establish that the FHA the TFHA or the HFHO was violated. *See* [Discussion Infra]. The fact that the Pruckas expressed a preference that may arguably be based in Mr. Pruckas' personal bias does not, *ipso facto*, implicate McGee. It is true that McGee knew of the Pruckas' preference and yet, consummated a contract between the Pruckas' and the Naths. That fact alone is insufficient to establish that she was a co-conspirator. *See United States v. Alzanki*, 54 F.3d 994, 1003 (1st Cir. 1995), *cert. denied*, 116 S.Ct. 909 (1996). Therefore, the Court holds that the evidence fails to establish even a *prima facie* showing that McGee was a knowing participant in any conspiracy.

## VII.   CONCLUSION

The Court is of the opinion based on the foregoing discussion that defendants' motions for directed verdict [Document Nos. 165 and 168], renewed motions for judgment [Document No. 194] and, renewed motion for judgment as a matter of law [Document No. 205] are meritorious and should have been granted as to the Petrellos' discrimination and conspiracy claims. Therefore, the Court sets aside its previous adverse rulings on those motions and GRANTS the relief requested. The remaining state law claims and any counterclaims, including the Naths' claim to clear the title to their house, are remanded to the 55th Judicial District Court of Harris County Texas pursuant to 28 U.S.C. § 1447(c).

It is so Ordered.

SIGNED at Houston, Texas this 27th day of January, 2011.

Kenneth M. Hoyt
United States District Judge